UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                  :

U1IT4LESS, INC., d/b/a/ NYBIKERGEAR,      :

                   Plaintiff,        :

                                                    :

                  -v-            :

                                                    :

FEDEX CORPORATION, FEDEX            :
CORPORATE SERVICES, INC., and FEDEX    :
GROUND PACKAGE SYSTEM, INC.,        :

                                                    :

                  Defendants.      :

                                                    :

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 25, 2015

11-cv-1713 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

       Plaintiff U1it4Less, Inc., an internet retailer of motorcycle related clothing

and accessories, filed this action against various FedEx entities[1] on March 11, 2011

for claims related to its use of FedEx to ship merchandise throughout the United

States and abroad.  (ECF No. 1.)[2]  On February 27, 2015, this action was reassigned

to the undersigned.  Before this Court is defendants' motion for partial summary

judgment as to plaintiff's class claims on the grounds that plaintiff contractually

waived its ability to participate in a class action against defendants.  (ECF No. 156.)

For the reasons stated below, the Court GRANTS defendants' motion.

---

[1] Defendant FedEx Ground Package System, Inc. ("FedEx Ground") ships and delivers small
packages by motor carrier in the United States and Canada.  Defendant FedEx Corporation
("FedEx") is the parent corporation of FedEx Ground.  FedEx funds, controls, and oversees FedEx
automation software and the information technology involved in weighing, measuring, rating,
pricing, billing, and paying for FedEx Ground's services.  FedEx is also the parent company of
Defendant FedEx Corporate Services, Inc. ("FedEx Services") which manages, supports, and provides
customer service for the information technology used in connection with scanning, data collection,
sorting, weighing, measuring, rating, and billing for FedEx Ground.

[2] The operative Third Amended Complaint was filed on December 22, 2014. (ECF No. 134.)

I.      FACTUAL BACKGROUND[3]

Plaintiff entered into a "FedEx Pricing Agreement" with FedEx Services, who was acting as an agent for FedEx Ground, for shipment of its goods.  (Defs' 56.1 ¶¶ 5, 11, ECF No. 159.)  Plaintiff had an opportunity to review the Pricing Agreement before agreeing to it, and it admits that FedEx did not subject it to any undue pressure or high-pressure sales tactics.  (Id. ¶¶ 7, 9.)

The FedEx Pricing Agreement plainly incorporated by reference the contractual terms and conditions contained in FedEx's Service Guide.  (Id. ¶ 5.) Specifically, the Pricing Agreement provided:

> **2. Service Guide.**  Each shipment made with FedEx is subject to the country and origin location's terms and conditions of carriage and the FedEx Service Guide in effect at the time of shipment, which terms are incorporated into the Agreement by reference . . .

(Id.)  Plaintiff subsequently entered into other FedEx Pricing Agreements that contained similar language incorporating the Service Guide.  (Id. ¶ 6.)  It also entered into a FedEx Ship Manager Software End-User License Agreement for the use of FedEx software in preparing its shipments; this contract similarly provided that the terms of carriage for any shipments would be governed by the FedEx Service Guide and tariff, which it incorporated by reference.  (Id. ¶¶ 15-16.)  When

---

[3] The following facts are taken from the Local Rule 56.1 statements submitted by the parties in connection with this motion for summary judgment and their supporting materials.  (ECF Nos. 159, 164, 166.)  The Court cites to the parties' factual submissions only when they support a factual proposition, cite relevant material, and are not contradicted in pertinent part by a counter-statement supported by citation to evidence that would be admissible.  See Local Civil Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004).

plaintiff sent a shipment using FedEx's software, plaintiff received a receipt stating that the terms and conditions of the Service Guide governed the shipment.  (Id. ¶ 17.)  When plaintiff sent shipments using the FedEx website, rather than using the software, it saw a message stating, "By clicking on the Ship/Continue button, you agree to the FedEx Ship Manager at fedex.com Terms of Use and the FedEx terms of shipping in the applicable FedEx Service Guide. . . ." (Id. ¶¶ 18-19.)

The FedEx Service Guide contains a section on the FedEx Ground Tariff, which included the following contractual class action waiver:

> You agree that you will not sue FedEx Ground as a class plaintiff or class representative, join as a class member, or participate as an adverse party in any way in a class action lawsuit against FedEx Ground.  Nothing in this paragraph, however, limits your rights to bring a lawsuit as an individual plaintiff.

(Id. ¶ 23.)

Between July 2008 and August 2010, plaintiff shipped over 5,000 packages with FedEx.  (Id. ¶ 20.)  Approximately 395 of the shipments went from the United States to Canada.  (Id. ¶ 21.)  For some of those shipments to Canada, plaintiff received notices that FedEx would bill plaintiff duties and taxes because it was unable to collect duties and taxes from the Canadian recipient.  (Id. ¶ 22.)  These notices referred plaintiff to the language of the FedEx Ground Tariff in the Service Guide providing for such a policy.  (Id.)

II.   STANDARD OF REVIEW

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of

a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

On summary judgment, the Court must "construe all evidence in the light most

favorable to the nonmoving party, drawing all inferences and resolving all

ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving

party's claims cannot be sustained, the opposing party must set out specific facts

showing a genuine issue of material fact for trial.  Price v. Cushman & Wakefield,

Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d

255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment,"

because "[m]ere conclusory allegations or denials . . . cannot by themselves create a

genuine issue of material fact where none would otherwise exist."  Hicks v. Baines,

593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d

at 685 ("In seeking to show that there is a genuine issue of material fact for trial,

the non-moving party cannot rely on mere allegations, denials, conjectures or

conclusory statements, but must present affirmative and specific evidence showing

that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the

outcome of the suit under the governing law"—will properly preclude the entry of

summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986) (stating that the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts"). The Court should not

accept evidence presented by the nonmoving party that is so "blatantly contradicted

by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S.

372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)

("Incontrovertible evidence relied on by the moving party . . . should be credited by

the court on [a summary judgment] motion if it so utterly discredits the opposing

party's version that no reasonable juror could fail to believe the version advanced by

the moving party.").

III.    DISCUSSION

The question before the Court is whether the class action waiver of the FedEx

Ground Tariff in the Service Guide is enforceable. Defendant argues that the

Supreme Court in 2013 made clear its preference for enforcing such waivers. See

Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304 (2013). While that case

dealt with a class action waiver also containing an arbitration agreement,

defendant argues that there is no reason to distinguish that case from the instant

lawsuit in which the waiver was contained in an arguably narrower provision: the

waiver was not combined with an arbitration agreement as in Italian Colors. Here,

the shipper remains contractually free to file suit in court. In addition, defendant

points out that plaintiff is a corporation in the business of shipping merchandise

and plaintiff conceded that it had an opportunity to review the terms of the agreement and was not pressured to sign it.

Plaintiff vigorously opposes the motion.  Plaintiff argues that the ruling in Italian Colors is limited to arbitration agreements containing class action waivers – and, first and foremost, evinces an intent to insure arbitration agreements are given full effect.  Plaintiff also argues that enforcing the waiver thwarts the objectives of using the class action mechanism in RICO cases.  Further, it asserts that the class action waiver is an unreasonable contract of adhesion as FedEx had superior bargaining power, the agreements are standard form, and there are few competitors providing an equivalent service.  Finally, it argues that a previous opinion by Judge Seibel regarding the motion to dismiss found that the documents in which the class action waiver is incorporated do not govern plaintiff's RICO claims.

The Court has carefully reviewed the parties' arguments, the relevant case law, and policies underlying class actions and waivers of that procedure.  Based upon the Court's review, it is clear that the class action waiver of the FedEx Ground Tariff in the Service Guide is enforceable here.  The Italian Colors case is instructive, irrespective of certain obvious factual differences between this case and that one.  There, the provision at issue contained two separate pieces: an arbitration agreement and, in addition, a class action waiver.  The plaintiffs had attempted to assert class claims against a credit card company despite the prohibition of class claims as set forth in a form contract.  Plaintiffs argued that requiring them to litigate their claims individually in arbitration "bars effective vindication" as they

6

would have no economic incentive to pursue their claims.  Id. at 2310.  Plaintiffs

also argued that enforcing the class action waiver, and therefore requiring them to

litigate their cases individually, contravened the policies of the antitrust laws.  Id.

at 2309.  The Supreme Court disagreed:

> The class action waiver merely limits arbitration to the two contracting
> parties. It no more eliminates those parties' right to pursue their statutory
> remedy than did federal law before its adopting of the class action for legal
> relief in 1938. . . . Or, to put it differently, the individual suit that was
> considered adequate to assure "effective vindication" of a federal right before
> adoption of class-action procedures did not suddenly become "ineffective
> vindication" upon their adoption.

Id. at 2311.

Unlike Italian Colors, this case does not involve an arbitration agreement

plus a class action waiver.  Here, this Court must determine whether the class

action waiver is rendered ineffective in the absence of an arbitration agreement.

Nothing in Italian Colors suggests that class action waivers contained in a provision

also containing an arbitration agreement should be treated as more sacrosanct than

waivers in context of a contract without an arbitration agreement.  To be sure, the

particular congressional policies in the arbitration context give additional impetus

to enforcing that arbitration portion of the agreement.  But no legal principle or

policy principle suggests that the rationale underlying the Supreme Court's

analysis in Italian Colors relating to the class action waiver should be different.

Rather, in the absence of an accompanying arbitration agreement, the

appropriate test of determining the enforceability of a class action waiver has two

steps: (1) The Court must first ask if the class action waiver at issue is

unconscionable under the applicable state law; and, if not, (2) the Court must next ask if the statutory scheme (here, RICO) suggests legislative intent or policy reasons weighing against enforcement of such a waiver.  If the answer to both questions is "no" – as it is here – a waiver may be enforced.  Indeed, under such circumstances, principles of contract law strongly support enforceability.

Under New York law, an unconscionable contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988).  For a contract to be held unconscionable, the party alleging the defect must generally show both substantive and procedural unconscionability.  Several factors contribute to the determination of whether a contract clause is procedurally unconscionable, including "(1) the size and commercial setting of the transaction; (2) whether there was a 'lack of meaningful choice' by the party claiming unconscionability; (3) the 'experience and education of the party claiming unconscionability;' and (4) whether there was 'disparity in bargaining power.'"  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 787 (2d Cir. 2003) (quoting Gillman, 534 N.E.2d at 828).  Here, no facts support procedural unconscionability.[4]  Plaintiff is a business involved in the selling and shipment of merchandise; it is not an individual selling a small quantity goods it sold on eBay.  Plaintiff does not allege that FedEx used high pressure

---

[4] As no facts support procedural unconscionability, the Court need not reach substantive unconscionability.  However, the Court notes that no facts suggest substantive unconscionability either.

tactics or deceptive language; it instead admits to having the time and business savvy to review the contract before agreeing to it.  (Defs' 56.1 ¶¶ 7, 9.) Furthermore, FedEx was not the only provider of shipping services available to plaintiff.  That the agreements are standard form and FedEx holds more bargaining power than plaintiff is not in and of itself sufficient to invalidate a binding business transaction.  See Dallas Aerospace, 352 F.3d at 775.

In terms of reviewing the statutory scheme, the question as set forth in Italian Colors is whether the scheme suggests collective actions are preferred and whether the scheme "guarantee[s] an affordable procedural path to vindicate every claim."  Id. at 2309.  The teaching of this case is, inter alia, that to decide enforceability, a court must look to the underlying statutory scheme and determine if "contrary congressional command" requires the rejection of the waiver.  Id. at 2309; see also Sutherland v. Ernst & Young LLP, 726 F.3d 290, 298 (2d Cir. 2013) (analyzing FLSA to determine that it does not contain a "contrary congressional command" requiring the rejection of a class action waiver in the FLSA arbitration agreement).

Here, RICO is the relevant statutory scheme.  Nothing in that statute favors class claims versus pursuit of individual ones.  See also Shetiwy v. Midland Credit Mgmt., 959 F. Supp. 2d 469, 475 (S.D.N.Y. 2013) (civil RICO contains no statutory preference for proceeding on a class basis); Khanna v. American Exp. Co., No. 11 Civ. 6245 (JSR), 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) ("In any event, in the absence of any evidence that Congress intended that RICO require the availability

of class-based proceedings, the Court declines to find that RICO invalidates private agreements that render such proceedings unavailable."). Accordingly, as in <u>Italian Colors</u>, nothing in the statutory scheme prevents the enforceability of the class action waiver of the FedEx Ground Tariff in the Service Guide.

<u>Additional Arguments</u>

Plaintiff attempts to avoid the waiver by arguing that the Service Guide's provisions extending to "agents" of FedEx Ground is inapplicable because FedEx Services, which signed plaintiff to the FedEx Pricing Agreement, was not an agent of FedEx Ground. This argument is unpersuasive. FedEx Ground used sales representatives from FedEx Services to sign customers to its Pricing Agreements and shipped goods in accordance with the discounted rates provided for in those agreements. FedEx Services was an agent of FedEx Ground in this case as it acted with authority by FedEx Ground to enter into contracts on the principle's behalf. <u>See</u> <u>Highland Capital Mgmt. LP v. Schneider</u>, 607 F.3d 322, 327 (2d Cir. 2010).

Plaintiff finally argues that Judge Seibel already decided that the Service Guide containing the class action waiver does not govern the conduct of which plaintiff complains. That is incorrect. On September 29, 2011, defendants moved to dismiss the complaint, but it did not make the terms of the Service Guide the basis of their motion. (ECF No. 42.) The Court's ruling was based on its view as to the necessary level of specificity to state a RICO claim. <u>U1it4less, Inc. v. FedEx Corp.</u>, 896 F. Supp. 2d 275, 288-91 (S.D.N.Y. 2012). The Court stated that plaintiff's claims did not implicate the licensed software or the forum selection clause in the

10

software license agreements.  Id. at 286.  The decision notes that the Service Guide did "not govern the conduct of which Plaintiff complains", but only as it pertains to the forum selection clause.  Id.  The Court clarified in a footnote that "it is unclear whether Defendants actually argue that provisions of the Service Guide constitute an independent basis for dismissal . . ." Id. at 286 n.8.  The Court at no time decided the issue of the applicability of the class action waiver.  That issue has not been precluded.[5]

IV.     CONCLUSION

For the above reasons, defendants' motion for partial summary judgment as to class claims is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 156.

SO ORDERED.

Dated:      New York, New York
            June 25, 2015

_____
        KATHERINE B. FORREST
        United States District Judge

---

[5] Even if the issue had been the "law of the case", the intervening Italian Colors case in 2013 would allow this Court to reconsider an earlier decision.