UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                  :

U1IT4LESS, INC., d/b/a/ NYBIKERGEAR,    :
                                  :

            Plaintiff,              :

-v-                        :

FEDEX CORPORATION, FEDEX         :
CORPORATE SERVICES, INC., and FEDEX  :
GROUND PACKAGE SYSTEM, INC.,       :

            Defendants.           :

------------------------------------------------------------X

11-cv-1713 (KBF)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 27, 2016

KATHERINE B. FORREST, District Judge:

     Plaintiff U1IT4less, Inc. filed this suit against defendants FedEx Corporation

("FedEx Corp."), FedEx Corporate Services, Inc. ("FedEx Services"), and FedEx

Ground Package System, Inc. ("FedEx Ground") on March 11, 2011.  (ECF No. 1.)

The gravamen of plaintiff's complaint and its subsequent amendments (ECF Nos.

27, 41, & 134) is that defendants improperly calculated the weight of certain

packages and improperly collected certain Canadian customs charges from shippers

rather than recipients.  (TAC[1] ¶¶ 1-3.)  Plaintiff alleges that these actions constitute

various violations of the Racketeer Influenced and Corrupt Organizations ("RICO")

Act, 18 U.S.C. § 1962(c)-(d), a federal statute regarding motor carriers' billing and

collecting practices, 49 U.S.C. § 13708(b), and New York General Business Law §

349, which prohibits deceptive acts in commerce.  (TAC ¶¶ 4, 43-159.)

---

[1] The notation "TAC" refers to the Third Amended Complaint, filed December 22, 2014 and available at ECF No. 134.

Plaintiff's claims under state law and 49 U.S.C. § 13708 have been dismissed for failure to state a claim, as has its claim that defendants engaged in a RICO conspiracy.  See U1IT4less, Inc. v. FedEx Corp., 896 F. Supp. 2d 275 (S.D.N.Y. 2012).  (ECF No. 55.)  The Court also previously granted defendants' motion for partial summary judgment as to plaintiff's contractual class action waiver.  (ECF No. 169.)  Now before the Court is defendants' motion for summary judgment on the two remaining RICO counts.  (ECF No. 181.)

The RICO statute imposes liability on persons that improperly use a distinct entity as a vehicle for misdeeds.  It is not a statute that attaches federal criminal and civil liability to routine claims of fraud involving a parent and its subsidiary, or two sister corporations.  The undisputed facts of this case demonstrate that the defendant corporations, a holding company and one of its subsidiaries, are not "distinct" from the alleged enterprise, another wholly owned subsidiary, for RICO purposes.  If plaintiff's theory of RICO distinctness were accepted, it would transform every routine allegation of fraud involving a company that uses the routine holding company/subsidiary structure at issue here into a RICO claim.  That  is not and should not be the law.

For these and the reasons stated below, the motion is GRANTED.

I.      FACTUAL BACKGROUND

        A.      The Events

        Plaintiff is an internet retailer of motorcycle-related clothing and accessories.
(Def.'s 56.1[2] ¶ 1.)  Between July 2008 and August 2010, FedEx Ground determined
a price for approximately 5,490 packages which it billed to plaintiff's FedEx
account.  (Id. ¶ 6.)  Plaintiff alleges that approximately 150 of those packages were
rated at a weight higher than their true weight, resulting in higher shipping prices.
(Id. ¶ 7.)  Between May 2009 and May 2010, Plaintiff shipped 395 packages to
Canada using FedEx Ground.  (Id. ¶¶ 40-41.)  Plaintiff further alleges that,
although it indicated on FedEx's software that recipients were responsible for
Canadian customs, defendants nonetheless improperly charged plaintiff for such
charges at least 150 times.  (TAC ¶¶ 106, 112.)

        B.      FedEx Corporate Structure

        Plaintiff's remaining claims allege, inter alia, a RICO enterprise stemming
from the actions of three related corporations, FedEx Corp., FedEx Services, and
FedEx Ground.  Defendant FedEx Corp. is a publicly traded holding company for
various subsidiaries engaged in shipping-related businesses.  (Def.'s 56.1 ¶ 2.)
Defendant FedEx Services is a wholly-owned subsidiary of FedEx Corp., and
provides sales, marketing, and information technology support to its sister
subsidiaries, including FedEx Ground.  (Id. ¶ 3.)  FedEx Ground is also a wholly-

---

[2] The notation "Def.'s 56.1" refers to defendants' statement of material facts pursuant to Local Civil Rule 56.1.
(ECF No. 184.)  Unless otherwise noted, this opinion relies solely on statements of fact which plaintiff did not
dispute in its response.  (ECF No. 190.)

owned subsidiary of FedEx Corp., and it offers small package delivery throughout the United States and Canada.  (Id. ¶ 4.)

FedEx Corp. has its principal place of business in Memphis, Tennessee.  (Pl.'s 56.1[3] ¶ 46.)  Memphis is also FedEx Services' principal place of business.  (Id.) FedEx Ground's principal place of business is located outside Pittsburgh, in Moon Township, Pennsylvania.  (Id. ¶ 45.)  FedEx Ground was previously known as Roadway Package System ("RPS") and was a subsidiary of Caliber Systems, Inc. (TAC ¶ 30; ECF No. 140 ¶ 30.)  FedEx Corp. acquired Caliber Systems, Inc. in 1998 and subsequently rebranded RPS as FedEx Ground.  (TAC ¶ 30; ECF No. 140 ¶ 30.)

FedEx Corp. does not exercise day-to-day control over the operations of its subsidiaries, including FedEx Services and FedEx Ground.  (Def.'s 56.1 ¶ 2.)  Each corporation has its own officers and board of directors; there is little overlap between these officers and directors.  (Pl.'s 56.1 ¶ 50.)  Plaintiff has identified numerous instances of court proceedings in which FedEx and its representatives represented and testified to the legal separation between the holding company and all of its subsidiaries.  (Id. ¶ 44.)  In one characteristic instance, a FedEx representative testified as follows when asked "[W]hat is the difference between the separate corporations and, say, looking at them as just separate divisions of one company?"

> Well, legally because they're a separate corporate entity, they're their own legal entity.  They have their own management and they have

---

[3] The notation "Pl.'s 56.1" refers to plaintiff's counter-statement of material facts pursuant to Local Civil Rule 56.1. (ECF No. 190.)  Unless otherwise noted, this opinion relies solely on statements of fact which defendants did not dispute in their response.  (ECF No. 199.)

their own Board of Directors so it is different than operating as a division within the same company.

(Id.)

C.     Litigation History

As stated above, plaintiff initiated this case on March 11, 2011.  (ECF No. 1.) Defendants moved to dismiss the complaint for failure to state a claim in September 2011.  (ECF No. 42.)  In September 2012, Judge Seibel, to whom the case was originally assigned, dismissed counts II, IV, and V.  U1IT4less, Inc. v. FedEx Corp., 896 F. Supp. 2d 275, 291-95 (S.D.N.Y. 2012). (ECF No. 55, at 21-28.)

Judge Seibel denied defendants' motion as to counts I and III against FedEx Corp. and FedEx Services, both of which allege RICO violations.  Id. at 287-91. (ECF No. 55, at 13-21.)  These counts assert the existence of a RICO enterprise, defined as "the FedEx Ground Enterprise consisting solely of FedEx Ground."  (Id. ¶¶ 65, 117.)  Plaintiff alleges that defendants "conduct[ed] and participate[d] in the affairs of the Enterprise through a pattern of racketeering activity."  (Id. ¶¶ 67, 118.)

In their original motion to dismiss these counts, which Judge Seibel denied, defendants "argue[d] that Plaintiff's Section 1962(c) RICO claim fails as a matter of law because Plaintiff fails to allege (1) an adequately distinct enterprise …; (2) the required 'pattern of racketeering activity,' …; (3) plausible or particularly-pleaded predicate acts of mail and/or wire fraud …; and (4) the required operation or control."  U1IT4less, 896 F. Supp. 2d at 287.  (ECF No. 55, at 13.)  The Court rejected each of these arguments at that stage.  The first of those alleged

shortcomings, the asserted failure to plead distinctness, is most relevant to the instant motion.

Judge Seibel wrote that "[d]efendants, relying principally on <u>Discon, Inc. v. NYNEX Corp.</u>, 93 F.3d 1055 (2d Cir. 1996), argue that the FedEx Ground Enterprise (consisting solely of FedEx Ground) is not distinct from its parent FedEx [Corp.] or from its sister FedEx Services because all are 'businesses operating in a unified corporate structure.'" <u>Id.</u> (ECF No. 55, at 14 (quoting ECF No. 43, at 24.).) Judge Seibel rejected this argument in light of <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158 (2001). Judge Seibel quoted that case in noting that FedEx Corp., FedEx Services, and FedEx Ground "are each 'distinct legal entit[ies], with legal rights, obligations, powers, and privileges different from' each other." <u>U1IT4less</u>, 896 F. Supp. 2d at 288 (quoting <u>Cedric Kushner</u>, 533 U.S. at 163). (ECF No. 55, at 15.) She concluded from this that "[t]he logic of <u>Cedric Kushner</u> … renders plausible the conclusion that the FedEx Ground Enterprise is distinct from FedEx [Corp.] and FedEx Services." <u>Id.</u> (ECF No. 55, at 15.) In a footnote, Judge Seibel remarked that plaintiff's complaint "alleges that FedEx Ground, originating as a separate company and with separate corporate headquarters, may not merely be part of FedEx's 'unified corporate structure,' and may not be the equivalent of a division operating within FedEx," which might provide an alternative basis for rejecting defendant's motion to dismiss. <u>Id.</u> at 288 n.10 (citations omitted) (quoting <u>Discon</u>, 93 F.3d at 1064). (ECF No. 55, at 15 n.10.) In another footnote, Judge

Seibel questioned whether "Discon is still good law despite the logic of Cedric Kushner." Id. at 288 n.11.  (ECF No. 55, at 15 n.11.)

In February 2015 the case was reassigned to the undersigned.  In May 2015 defendants moved for partial summary judgment dismissing plaintiff's class claims on the ground that plaintiff had contractually waived its ability to participate in a class action against defendants.  (ECF No. 156.)  The Court granted defendants' motion in June, (ECF No. 169) and denied plaintiff's motion for a certification of interlocutory appeal in July. (ECF Nos. 170, 171.)  The Court also denied a motion to compel the production of documents plaintiff filed.  (ECF Nos. 172, 175.)  In its order denying that motion, the Court noted that

> [w]hile the RICO [claim] has not been dismissed, it is highly unlikely to survive once a motion to dismiss it (under 12(c) or 56) is made. According to longstanding Second Circuit precedent, a corporation cannot, through conduct of its ordinary business, constitute an enterprise.  See Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120-121 (2d Cir. 2013); Riverwoods v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir. 1994).

(ECF No. 175, at 3.)  Defendants filed the instant motion on October 16, and it became fully briefed on December 4.  (ECF Nos. 181, 198.)

## II.   LEGAL PRINCIPLES

### A.   Summary Judgment Standard

Summary judgment may not be granted unless a movant shows, based on admissible record evidence, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine

issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In reviewing a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it."  Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

      B.    RICO Distinctness

Section 1962(c) of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  The statute provides a private cause of action.  See 18 U.S.C. § 1964(c).  For RICO purposes, "'person' includes any individual or entity capable of holding a legal or beneficial interest in property," and "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(3)-(4).

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not

simply the same 'person' referred to by a different name." <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001).

III.   ANALYSIS

This motion requires the Court to determine whether the alleged RICO persons, FedEx Corp. and FedEx Services, are sufficiently distinct from the alleged RICO enterprise, FedEx Ground, to support civil RICO liability.[4]  For the reasons set forth below, the Court concludes that they are not.

Congress declared that its purpose in passing the RICO statute was "to seek the eradication of organized crime in the United States." <u>United States v. Turkette</u>, 452 U.S. 576, 589 (1981) (quoting Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 923 (1970)).  Although "the major purpose of [the RICO Act] is to address the infiltration of legitimate business by organized crime," <u>id.</u> at 591, its legislative history "also refers to the need to protect the public from those who would run 'organization[s] in a manner detrimental to the public interest.'" <u>Cedric Kushner</u>, 533 U.S. at 165 (alteration in original) (quoting S. Rep. No. 91-617, at 82 (1969)).  RICO liability thus potentially sweeps much more broadly than the particular criminal underworld whose seeming impunity to state law enforcement efforts motivated the Act's passage.  Nonetheless, the Second Circuit has cautioned courts to carefully scrutinize RICO claims "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do

---

[4] Defendants have also advanced alternative arguments in support of summary judgment.  (<u>See</u> ECF No. 182, at pp. 13-24.)  Because the Court grants summary judgment on the "distinctness principle" issue, it does not consider these alternative bases.

10

not support it." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014) (quoting Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 20 (1st Cir. 2000)); cf. C.A. Westel de Venezuela v. Am. Tel. & Tel. Co., No. 90 Civ. 6665 (PKL), 1994 WL 558026, at *7 (S.D.N.Y. Oct. 11, 1994) ("Plaintiff has attempted to plead a RICO violation in what is essentially a routine commercial dispute.").

Section 1962(c) of the RICO Act prohibits a person from unlawfully conducting the affairs of a separate, distinct enterprise.  The statute's "distinctness principle" has been the subject of a number of decisions binding on the Court. However, the Court is not aware of any case precisely like this one, in which the alleged RICO persons are the corporate parent and sister subsidiary of the alleged RICO enterprise, a wholly-owned subsidiary.  In order to determine what the distinctness requirement demands in this case, the Court must examine a number of binding decisions in light of the RICO statute's basic purposes, which the Supreme Court has identified as "both protect[ing] a legitimate 'enterprise' from those who would use unlawful acts to victimize it and also protect[ing] the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a vehicle through which unlawful activity is committed."  Id. at 164 (internal quotation marks, alteration, and citations omitted).

In Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339 (2d Cir. 1994), the Second Circuit affirmed a district court's decision to enter a directed verdict for the defendants on a § 1962(c) claim.  The plaintiff had alleged that the defendant bank was the RICO person and alleged "an association-in-fact

enterprise known as the 'Restructuring Group,'" which consisted of the bank and two of its loan officers.  Id. at 341.  In light of the evidence "that the individual members of the Restructuring Group were employed by Marine Midland at the relevant times," and that "all of the actions taken by the Restructuring Group … were undertaken on behalf of Marine Midland and were directly related to the bank's business," the Second Circuit held that RICO liability was unavailable.  Id. at 344-45.  "[T]he distinctness requirement may not be circumvented," the Riverwoods court warned, "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant."  Id. at 344.

The Second Circuit reached a similar conclusion in Discon, Inc. v. NYNEX Corp., 93 F.3d 1055 (1996), vacated on other grounds, 525 U.S. 128 (1998).  In Discon, the plaintiff, a corporation providing "removal services"[5] to phone companies, brought RICO claims against a holding company and two of its wholly owned subsidiaries, one of which was a local telephone service provider and the other of which provided procurement services for the holding company and a number of sister subsidiaries.  Id. at 1057.  The thrust of the complaint was that the procurement subsidiary purchased removal services for the local service provider subsidiary at inflated rates, cutting plaintiff out of the market.  Id. at 1058.  Plaintiff identified all three corporations (that is, the holding company and the two

---

[5] "[R]emoval services include salvaging and disposing of obsolete telephone central office equipment."  Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1057 (1996), vacated on other grounds, 525 U.S. 128 (1998).

subsidiaries) as the RICO persons who conducted the affairs of an association-in-fact enterprise labeled "the 'NYNEX Group,' which consist[ed] of the three corporations." Id. at 1063.  The Second Circuit concluded that Riverwoods controlled.  Although the defendant corporations were "legally separate from each other and from the NYNEX Group," they nonetheless "were acting within the scope of a single corporate structure, guided by a single corporate consciousness." Id. at 1064.  The Discon court held that under these circumstances, the requisite distinctness between RICO person and RICO enterprise was absent, precluding RICO liability.

Five years after Discon, a Second Circuit case on RICO distinctness advanced to the Supreme Court.  In Cedric Kushner Promotions, Ltd. v. King, 219 F.3d 115 (2d Cir. 2000), rev'd, 533 U.S. 158 (2001), the complaint asserted a RICO claim against boxing promoter Don King.  Id. at 116.  King was both the president and sole shareholder of a closely held corporation, DKP, and the allegations concerned actions he took within the scope of his employment.  Id. at 116-17.  The complaint named King as the RICO person, while DKP was the alleged RICO enterprise.  Id. at 117.  The Second Circuit held that its "decisions in Riverwoods and Discon … leave no room for creating exceptions to the distinctness requirement based on the identity of the defendant." Id.  Thus, "[a]s it [was] undisputed that King was an employee acting within the scope of his authority at DKP," the RICO allegations failed the distinctness principle.  Id.

A unanimous Supreme Court reversed.  533 U.S. at 166.  It endorsed the distinctness principle as consistent with the language and purposes of the RICO statute, id. at 161-62, but rejected the Second Circuit's focus on whether King had been acting within the scope of his authority as an employee of the RICO enterprise corporation.  Id. at 163.  Instead, the Supreme Court noted that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.  And we can find nothing in the statute that requires more 'separateness' than that."  Id.

The Cedric Kushner Court also distinguished that case from the precedent the Second Circuit had cited, Riverwoods and Discon.  Noting that it did not intend to "consider the merits of these cases," the Court drew a distinction between the facts of the case before it and earlier Second Circuit precedent that "concerned a claim that a corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise.'"  Id. at 164.  Returning to the statute's text, the Court observed that "[i]t is less natural to speak of a corporation as 'employed by' or 'associated with' this latter oddly constructed entity."  Id.

The Second Circuit has applied Cedric Kushner's refinement of the RICO distinctness principle twice.  In City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425 (2d Cir. 2008), rev'd on other grounds, 559 U.S. 1 (2010), the Second Circuit reversed the district court's dismissal of the City's RICO claims.  Id. at 438.  The complaint alleged two forms of RICO enterprises:  in one form, called "primary

enterprises," "a defendant corporate entity is alleged to be a passive enterprise with its defendant officer(s) and/or director(s) acting as the RICO 'person[s],'" while in the other, called "association-in-fact enterprises," "the association consists of a defendant entity and a third party, and the RICO 'person[s]' consist of the defendant entity and, in general, the officers and/or directors of the entities comprising the enterprise." Id. at 435.

The Smokes-Spirits.com decision analyzed whether the primary enterprises were distinct for RICO purposes. According to the City's complaint, "the enterprise is an innocent corporation, with its own legal basis for existing, and the persons are employees or officers of the organization unlawfully directing the enterprise's racketeering activities." Id. at 448. The Second Circuit held that these allegations were "sufficient under the distinctness standards articulated in Cedric Kushner," which required "that the RICO 'person' and alleged 'enterprise' must be only legally, not necessarily actually, distinct." Id. (citing Cedric Kushner, 533 U.S. at 163). It thus allowed the City's civil RICO claims to proceed.

More recently, in Cruz v. FXDirectDealer, LLC, 720 F.3d 115 (2d Cir. 2013), the Second Circuit reaffirmed the continued vitality, for at least some purposes, of Riverwoods and Discon. In Cruz, the court affirmed the dismissal of a RICO claim that alleged that one wholly owned corporation was the RICO person who improperly conducted the affairs of an enterprise consisting of that corporation, its

COO, its managing director, and its parent company.[6]  Id. at 120-21.  The decision
quoted Riverwoods to explain that the COO and director were not distinct because
"a RICO enterprise may [not] consist 'merely of a corporate defendant associated
with its own employees or agents carrying on the regular affairs of the defendant.'"
Id. at 121 (quoting Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30
F.3d 339, 344 (2d Cir. 1994)).  Left with an enterprise consisting only of the alleged
RICO person and its parent company, the Cruz court found that this violated the
distinctness requirement recognized in Discon, "that corporations that are legally
separate but 'operate within a unified corporate structure' and 'guided by a single
corporate consciousness' cannot be both the 'enterprise' and the "person" under §
1962(c)."  Id. (quoting Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir.
1996), vacated on other grounds, 525 U.S. 128 (1998)).  In a footnote, the Second
Circuit noted that because the complaint only alleged an association-in-fact
enterprise, the opinion did not "address whether the Supreme Court's decision in
Cedric Kushner … would permit a complaint naming [a subsidiary] as the 'person'
and [its parent corporation] alone as the 'enterprise' to go forward."  Id. at 121 n.3.

   The hypothetical the Cruz decision raised closely resembles the allegations in
the instant matter; rather than accusing a subsidiary of conducting the affairs of its
parent company, the alleged enterprise, plaintiff alleges that a holding company,
FedEx Corp., and one of its wholly owned subsidiaries, FedEx Services, are the

---

[6] The complaint alleged that other entities also participated in the enterprise, but the Second Circuit found that those
entities were not plausibly alleged to share a common purpose and thus excluded them separately before considering
the distinctness of "the remaining members of the alleged enterprise—FXDD, Tradition, corporate counsel, and the
chief operating officer."  Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 121 (2d Cir. 2013).

RICO persons conducting the affairs of the alleged RICO enterprise, FedEx Ground, another wholly owned subsidiary.  (TAC ¶¶ 44, 65, 104, 117.)  The similarity between the facts of this case and the hypothetical the <u>Cruz</u> court explicitly identified as an open question refutes plaintiff and defendants' dueling insistence that controlling precedent clearly addresses the question before the Court.

Fortunately, several other Courts of Appeals have identified a RICO distinctness test that bridges the apparent gap between the Supreme Court's focus on legal identity in <u>Cedric Kushner</u> and the Second Circuit's reaffirmation of <u>Discon</u> in <u>Cruz</u>.  In <u>Bucklew v. Hawkins, Ash, Baptie & Co.</u>, 329 F.3d 923 (7th Cir. 2003), the Seventh Circuit rejected a RICO claim on distinctness grounds.  In that case, as in this one, "the enterprise alleged to have been conducted through a pattern of racketeering activity … [was] a wholly owned subsidiary of the alleged racketeer." <u>Id.</u> at 934.  Judge Posner, writing for the court, explained that this separate incorporation did not constitute "sufficient distinctness to trigger RICO liability … unless the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity."  <u>Id.</u>  The Sixth Circuit has adopted the same test, holding that although "a parent corporation and its subsidiaries [typically] do not satisfy the distinctness requirement," they may incur RICO liability "when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme."  <u>In re ClassicStar Mare Lease Litig.</u>, 727 F.3d 473, 493 (6th Cir. 2013).

A number of other post-Cedric Kushner decisions are consistent with this inquiry into whether the fact of separate incorporation facilitated the alleged unlawful activity.  See, e.g., In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig., 601 F. Supp. 2d 1201, 1213-15 (S.D. Cal. 2009) (adopting the Bucklew test in absence of controlling Ninth Circuit precedent); Chagby v. Target Corp., No. CV 08-4425-GHK (PJWx), 2009 WL 398972, at *1 n.2 (C.D. Cal. Feb. 11, 2009) ("If, as alleged, Target Corp. and its subsidiaries are a RICO enterprise, then every corporation that has subsidiaries and commits fraud is an enterprise for RICO purposes.  That is not the law."); Buyers & Renters United To Save Harlem v. Pinnacle Grp. N.Y., Inc., 575 F. Supp. 2d 499, 510-11 (S.D.N.Y. 2008) (holding that distinctness analysis in cases involving subsidiaries turns on whether the corporations are in distinct lines of business, citing Securitron Magnalock Corp. v. Schnablock, 65 F.3d 256, 263-64 (2d Cir. 1995)); Bates v. Nw. Human Servs., Inc., 466 F. Supp. 2d 69, 84 (D.D.C. 2006) (holding that, to determine distinctness, "it is appropriate 'to look to the allegations in the complaint to determine whether the parent's activities are sufficiently distinct from those of [its subsidiaries] at the time that the alleged RICO violations occurred.'" (alteration in original) (quoting Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 449 (1st Cir. 2000))); Z-Tel Commc'ns, Inc. v. SBC Comm'cns, Inc., 331 F. Supp. 2d 513, 561 (E.D. Tex. 2004) (applying Bucklew).

Limiting RICO liability in the parent-subsidiary context to circumstances in which separate incorporation facilitates the racketeering is also consistent with the

text and purposes of the RICO statute.  As noted above, the language of § 1962(c) clearly requires distinctness, and as the Sixth Circuit has held, "the statute's distinctness requirement will be rendered meaningless" "if a corporate defendant can be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated."  In re ClassicStar Mare Lease Litig., 727 F.3d 473, 492 (6th Cir. 2013).  Moreover, neither of the dual purposes of the statute that the Cedric Kushner Court recognized, "protect[ing] a legitimate enterprise from those who would use unlawful acts to victimize it and also protect[ing] the public from those who would unlawfully use an enterprise (whether legitimate or illegitimate) as a vehicle through which unlawful activity is committed," apply to a situation in which an enterprise, although separately incorporated, operates with respect to the alleged racketeer and victim as if it were a division of its parent corporation.[7]

The facts of this case indicate that there is no genuine question as to whether FedEx Ground's separate incorporation facilitated the alleged schemes; the "something more" is missing.  Plaintiff emphasizes the fact that FedEx Ground originated as RPS and that its headquarters and high-level employees are located far from the Memphis headquarters of FedEx Corp. and FedEx Services. (ECF Nos. 189 & 190.)  Plaintiff similarly collects a number of court filings in which FedEx Corp. and its various subsidiaries attest to their legal separation and distinctness

---

[7] Careful analysis of the circumstances under which a parent corporation might face liability as a RICO person that conducted the affairs of its wholly owned subsidiary is also consistent with the Supreme Court's holding that such corporations are not legally capable of conspiring with one another for other purposes.  See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 773-74 (1984) (antitrust).

from one another.  (See Pl.'s 56.1 ¶ 44.)  Neither of these facts indicate that the corporations at issue are distinct in the manner relevant to the RICO statute. There are many reasons a company may choose to make use of separate incorporation of its subsidiaries, and § 1962(c) does not stand for the proposition that every company that commits fraud after doing so violates the RICO Act.  See, e.g., Fitzgerald v. Chrysler Corp., 116 F.3d 225, 227 (7th Cir. 1997) (Posner, J.,) ("We have never heard it suggested that RICO was intended to encourage vertical integration.").

The fact of legal separation between FedEx Corp., FedEx Services, and FedEx Ground is wholly unrelated to the alleged improper acts in this case.  There is no allegation in the complaint, nor any suggestion in the parties' subsequent submissions, that FedEx Ground's separate incorporation played any role in either the Upweighing claim or the Canadian Customs claim.  This is not a case in which, for example, a parent corporation portrayed the separately incorporated entity as an unrelated corporation in furtherance of the unlawful scheme.  See In re ClassicStar, 727 F.3d at 493-94 ("NELC's separate corporate existence and purported independence were key aspects of the fraudulent scheme.")  Instead, plaintiff interacted with FedEx Ground and FedEx Services precisely as it would have had those sister subsidiaries in fact been divisions of a single FedEx corporation.  Therefore, there is no genuine question as to whether FedEx Corp. and FedEx Services are distinct from FedEx Ground for purposes of the RICO claims in the instant action.  They are not, and for that reason RICO liability does not attach.

IV.     CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate the motion at Docket No. 181 and to terminate this action.


        SO ORDERED.

Dated:          New York, New York
                January 27, 2016


                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge