**MANDATE**

**UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT**

N.Y.S.D. Case #
11-cv-1713(KBF)

_____

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of September, two thousand and seventeen.

Before:     Robert D. Sack,
            Raymond J. Lohier, Jr.,
            *Circuit Judges*,
            Gregory H. Woods,
            *District Judge.*\*

_____

U1IT4less, Inc., DBA NYBIKERGEAR,

        Plaintiff - Appellant,

v.

Fedex Corporation, Fedex Corporate Services, Inc., Fedex Ground Package System, Inc.,

        Defendants - Appellees.

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 10, 2017

**JUDGMENT**
Docket No. 16-533

The appeal in the above captioned case from a judgment of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs.   Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED.

For The Court:
Catherine O'Hagan Wolfe,
Clerk of Court

_____
\*Judge Gregory H. Woods of the United States District Court for the Southern District of New York, sitting by designation.

A True Copy
Catherine O'Hagan Wolfe
United States Court of Appeals, Second Circuit

**MANDATE ISSUED ON 10/10/2017**

16-533-cv
U1IT4Less Inc. v. FedEx Corp., et al.

1    **UNITED STATES COURT OF APPEALS**
2    **FOR THE SECOND CIRCUIT**
3
4    August Term, 2016
5
6    (Argued: March 7, 2017        Decided: September 18, 2017)
7
8    Docket No. 16-533-cv
9
10   ————————————————————————
11
12   U1IT4LESS, INC., d/b/a NYBIKERGEAR,
13
14   *Plaintiff-Appellant*,
15
16   v.
17
18   FEDEX CORPORATION, FEDEX CORPORATE SERVICES, INC., FEDEX
19   GROUND PACKAGE SYSTEM, INC.,
20
21   *Defendants-Appellees*.
22
23   ————————————————————————
24
25   Before:
26
27   SACK and LOHIER, *Circuit Judges*, and WOODS, *District Judge*.[*]
28
29       U1IT4Less, Inc., d/b/a NYBikerGear ("BikerGear"), appeals from a
30   judgment dismissing its claims against FedEx Corporation, FedEx Corporate
31   Services, Inc., and FedEx Ground Package System, Inc. (collectively, "FedEx").
32   BikerGear accused FedEx of fraudulently marking up the weights of packages
33   shipped by BikerGear and wrongly charging BikerGear for Canadian customs.
34   As relevant to this appeal, the United States District Court for the Southern

_____

[*] Judge Gregory H. Woods, of the United States District Court for the Southern District
of New York, sitting by designation.

1    District of New York (Seibel, *J.*) initially dismissed BikerGear's claim under 49

2    U.S.C. § 13708(b) for failure to state a claim.  Following discovery, the District

3    Court (Forrest, *J.*) granted summary judgment dismissing BikerGear's claims

4    under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on the

5    ground that BikerGear had failed to satisfy RICO's "distinctness" requirement.

6    We **AFFIRM**.  Judge WOODS concurs in a separate opinion.

7

8                                        JAY L.T. BREAKSTONE (Amanda C.
9                                        Broadwell, Jessica L. Richman, *on the brief*),
10                                       Parker Waichman LLP, Port Washington,
11                                       NY, *for Plaintiff-Appellant.*

12

13                                       AARON T. CASSAT, Federal Express
14                                       Corporation, Memphis, TN, *for Defendants-*
15                                       *Appellees FedEx Corporation & FedEx*
16                                       *Corporate Services, Inc.*

17

18                                       Benjamin J. Ferron & Jason W. Norris,
19                                       FedEx Ground Package System, Inc., Moon
20                                       Township, PA, *for Defendant-Appellee FedEx*
21                                       *Ground Package System, Inc.*

22

23   LOHIER, *Circuit Judge*:

24         U1IT4Less, Inc., d/b/a NYBikerGear ("BikerGear"), an internet retailer of

25   motorcycle gear, accuses FedEx Corporation and its subsidiaries FedEx

26   Corporate Services, Inc. and FedEx Ground Package System, Inc.[1] of fraudulently

27   marking up the weights of packages shipped by BikerGear and overcharging

---

[1] In this opinion we refer to FedEx Corporation as "FedEx Corp.," FedEx Corporate
Services, Inc. as "FedEx Services," and FedEx Ground Package System, Inc. as "FedEx
Ground."  We refer collectively to the three companies as "FedEx."

2

1   BikerGear for Canadian customs.  In doing so, BikerGear claims, FedEx violated

2   the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49

3   U.S.C. § 13708(b), and the Racketeer Influenced and Corrupt Organizations Act

4   ("RICO"), 18 U.S.C. § 1962(c).  As relevant to this appeal, the United States

5   District Court for the Southern District of New York (Seibel, J.) dismissed the

6   ICCTA claim on the pleadings because, it concluded, the ICCTA is not "directed

7   at" the type of billing dispute at issue in this case.  U1IT4Less, Inc. v. FedEx

8   Corp., 896 F. Supp. 2d 275, 294 (S.D.N.Y. 2012).  Following discovery, the District

9   Court (Forrest, J.) granted FedEx's summary judgment motion and dismissed

10  BikerGear's substantive RICO claims because BikerGear failed to adduce

11  evidence that FedEx Corp. and FedEx Services, the alleged RICO "persons," are

12  distinct from FedEx Ground, the alleged RICO "enterprise."  We **AFFIRM**.[2]

13                              BACKGROUND

14          FedEx Corp. is the public holding company for all of FedEx's wholly-

15  owned operating subsidiaries.  FedEx Ground is FedEx's ground delivery service

---

[2] The District Court also granted summary judgment to FedEx on BikerGear's class action RICO claims because the shipping contracts contained class action waivers. U1IT4Less, Inc. v. FedEx Corp., No. 11-cv-1713 (KBF), 2015 WL 3916247 (S.D.N.Y. June 25, 2015).  As we affirm the dismissal of BikerGear's individual RICO claims, we express no view on whether the District Court properly did so based on the class action waivers.

1   throughout the United States and Canada. FedEx Services provides sales,

2   marketing, and information technology support to the other FedEx subsidiaries.

3   FedEx Corp., which has fewer than 300 employees, does not exercise day-to-day

4   control over FedEx Ground or FedEx Services. Each company operates mostly

5   with its own directors and officers. FedEx Corp. and FedEx Services are

6   headquartered in Memphis, Tennessee, while FedEx Ground is headquartered in

7   Moon Township, Pennsylvania.

8       Like thousands of other retail companies, BikerGear used FedEx Ground

9   to ship products to its customers in the United States and Canada. The relevant

10  pricing and shipping contracts were executed by BikerGear and FedEx Services,

11  acting as an agent of FedEx Ground and FedEx Corp.

12      BikerGear alleges that FedEx engaged in two schemes. Under the first

13  scheme (BikerGear calls it the "Upweighting Scheme"), FedEx Ground rated

14  BikerGear's packages at weights higher than their actual weight, resulting in

15  overcharges to BikerGear. Overall, BikerGear alleges that it was overcharged for

16  roughly 150 of the 5,490 packages it shipped via FedEx Ground from July 2008 to

17  August 2010. Under the second scheme (dubbed the "Canadian Customs

18  Scheme"), FedEx Ground is alleged to have improperly charged BikerGear for

1    Canadian customs at least 150 times.  FedEx admits that a glitch in its shipping

2    software, now fixed, caused some wrongful customs charges.

3           After learning of the improper charges, BikerGear (both individually and

4    on behalf of a putative class of FedEx shipping customers) sued all three

5    defendants for violating the ICCTA and New York State's General Business Law.

6    It also asserted civil RICO and RICO conspiracy claims against FedEx Corp. and

7    FedEx Services under 18 U.S.C. § 1962(c) and (d).  FedEx moved to dismiss the

8    claims under Rule 12(b)(6).

9           Judge Seibel dismissed the ICCTA claim because BikerGear failed to allege

10   that FedEx stated one amount on its invoices but charged a different amount.

11   For reasons not relevant to this appeal, Judge Seibel also dismissed BikerGear's

12   RICO conspiracy and state law claims.  U1IT4Less, 896 F. Supp. 2d at 291–95.

13   Judge Seibel declined, however, to dismiss BikerGear's substantive RICO claims,

14   holding that the defendants' separate incorporation, without more, satisfied

15   RICO's requirement that the "person" alleged to violate 18 U.S.C. § 1962(c) be

16   distinct from the alleged "enterprise."  Id. at 287–88.

17          After discovery the case was reassigned to Judge Forrest, who granted

18   summary judgment to FedEx and dismissed the remaining RICO claims.

1  U1IT4Less, Inc. v. FedEx Corp., 157 F. Supp. 3d 341 (S.D.N.Y. 2016).  Contrary to

2  Judge Seibel's earlier ruling on the motion to dismiss, Judge Forrest held that the

3  mere fact of separate incorporation was not enough to satisfy the requirement

4  that the RICO "person" and "enterprise" be distinct.  Id. at 351-52.  In addition,

5  Judge Forrest concluded, BikerGear's RICO claims required a showing that the

6  separate incorporation of FedEx Ground facilitated the racketeering enterprise

7  allegedly run by FedEx Corp. and FedEx Services.  Id. at 350-51.  Because the

8  evidence showed only that BikerGear "interacted with FedEx Ground and FedEx

9  Services precisely as it would have had those sister subsidiaries in fact been

10  divisions of a single FedEx corporation," Judge Forrest concluded that there was

11  "no genuine question as to whether FedEx Corp. and FedEx Services are distinct

12  from FedEx Ground for purposes of the RICO claims."  Id. at 351-52.

13      This appeal followed.

14                               DISCUSSION

15      We first address Judge Seibel's Rule 12(b)(6) dismissal of BikerGear's claim

16  under the ICCTA, followed by Judge Forrest's grant of summary judgment

17  dismissing the RICO claims.

18

1      1.  <u>49 U.S.C. § 13708</u>

2      Billing and collection obligations of motor carriers are set forth in 49 U.S.C.

3  § 13708.  Section 13708(b), entitled "False or misleading information," provides

4  as follows:  "No person may cause a motor carrier to present false or misleading

5  information on a document about the actual rate, charge, or allowance to any

6  party to the transaction."  49 U.S.C. § 13708(b).

7      BikerGear claims that FedEx violated the statute by perpetrating the

8  Upweighting Scheme and the Canadian Customs Scheme and by failing to apply

9  certain discounts to which BikerGear was allegedly entitled under its shipping

10  contracts with FedEx.  But in the same breath BikerGear expressly <u>disclaims</u> that

11  FedEx "used rates other than their published tariff rates in computing charges."

12  Second Am. Class Action Compl. ("SAC") ¶ 145.  BikerGear's disclaimer is

13  dispositive of the inquiry before us:  Section 13708(b) requires only that FedEx

14  accurately document the charges that it <u>actually</u> assesses its customers.

15      In arriving at that conclusion, we are inclined to view the text of the

16  ICCTA as unambiguous.  Cf. <u>Solo v. United Parcel Serv. Co.</u>, 819 F.3d 788, 799

17  (6th Cir. 2016) ("We disagree with the district court that the language of

18  § 13708(b) is ambiguous and see no need to look to its sparse legislative

1   history.").  As noted, Section 13708(b) prohibits presentation of "false or

2   misleading information" about the "actual rate, charge, or allowance."  FedEx

3   makes the compelling argument that the text requires only that the charge FedEx

4   lists on a document match the charge FedEx assesses in fact.  On the other hand,

5   BikerGear argues that the term "actual" refers not to the charges FedEx assessed

6   in fact, but to the lesser amounts BikerGear claims it <u>should have</u> been charged

7   had FedEx properly weighed the packages.  In our view, the phrases "false or

8   misleading" and "actual" require a comparison between documented charges

9   and those assessed in fact, and the plain text therefore favors FedEx's position.

10  <u>Cf.</u> Actual, <u>Black's Law Dictionary</u> (10th ed. 2014) ("Existing in fact; real.");

11  <u>Actual</u>, <u>Oxford English Dictionary</u> (3d ed. 2010) ("Existing in fact, real; carried

12  out, acted in reality.").

13       On balance, then, FedEx offers the more plausible textual interpretation of

14  Section 13708(b) and its use of the term "actual."  But the issue of textual

15  ambiguity is close enough that, in prudence, we turn to the legislative history of

16  the statute to confirm our reading of the text.

17       In 1993 Congress sought to ban "off-bill discounting," "a practice by which

18  motor carriers provide discounts, credits or allowances to parties other than the

Case 16-3553, Document 105-1, 10/18/2017, 2146194, Page69 of 25

1    freight bill payer, without notice to the payer."[3]  Regulations Implementing

2    Section 7 of the Negotiated Rates Act of 1993 ("STB Decision"), 2 S.T.B. 73 (1997),

3    1997 WL 106986, at *1; see also H.R. Rep. No. 103-359, at 11 (1993), as reprinted in

4    1993 U.S.C.C.A.N. 2534, 2538 (describing the "thrust" of "[t]he off-bill

5    discounting provision").  It did so by enacting the predecessor statute to Section

6    13708, which required the Interstate Commerce Commission (ICC), the agency

7    then tasked with administering the statute, to issue regulations to:

8    (1) prohibit motor carriers "from providing a reduction in a rate set forth in its

9    tariff or [shipping] contract" to any person other than the person "paying the

10    motor carrier directly" for the shipping service; (2) require motor carriers to

11    disclose the "actual rates, charges, or allowances" on documents presented to the

12    final payer; and (3) prohibit a "person from causing a motor carrier to present

13    false or misleading information on a document about the actual rate, charge, or

14    allowance to any party to the transaction" (i.e., the prohibition now contained in

15    Section 13708(b)).  Negotiated Rates Act of 1993, Pub. L. No. 103–180, § 7, 107

16    Stat. 2044, 2051–52 (codified at 49 U.S.C. § 10767), repealed by ICCTA, Pub. L.

---

[3] Typically, this occurs when shippers like BikerGear charge their customers based on the freight bill—providing the carriers' invoices as proof—but receive off-bill discounts from the carriers.  The shippers pocket the savings, and the customers wind up paying more than the net freight charges.

1    No. 104–88, § 102(a), 109 Stat. 803, 873–74 (1995).  According to the Surface

2    Transportation Board (STB), which succeeded the ICC and assumed the task of

3    administering Section 13708, Congress mandated that the ICC regulations

4    require motor carriers to accurately disclose "the <u>basis</u> for any rates, charges, or

5    allowances."  STB Decision, 1997 WL 106986, at *1 (emphasis added); <u>see also</u>

6    Regulations Implementing Section 7 of the "Negotiated Rates Act of 1993"

7    (Interpretive Decision), Ex Parte No. MC-180, 1994 WL 94482, at *1–2 (ICC Mar.

8    22, 1994) (interpreting prior statute to require disclosure of "actual" amount

9    "paid by the party, or agent, responsible for payment" and the "allowances or

10    adjustments" paid by the carrier to other parties for reasonable services).

11          In 1995 Congress repealed the requirement that the ICC issue regulations

12    banning off-bill discounting, <u>see</u> ICCTA § 102(a), 109 Stat. at 873–74, and instead

13    placed the disclosure and false information provisions in the statute itself, <u>see</u> 49

14    U.S.C. § 13708(a)–(b).[4]  The STB explained that although the statute no longer

---

[4] Section 13708, entitled "Billing and collecting practices," provides in full as follows:

> **(a) Disclosure.**--A motor carrier subject to jurisdiction under subchapter I of chapter 135 shall disclose, when a document is presented or electronically transmitted for payment to the person responsible directly to the motor carrier for payment or agent of such responsible person, the actual rates, charges, or allowances for any transportation

1    bans off-bill discounting, it does "affirmatively require carriers to disclose certain

2    information <u>when they engage in the practice</u>."  STB Decision, 1997 WL 106986,

3    at *2 (emphasis added); <u>see also</u> <u>id.</u> at *3 (explaining that Section 13708 "signal[s]

4    a willingness to accept off-bill discounting, so long as it is clearly disclosed").

5          The legislative history—in particular the persuasive policy statements and

6    interpretive decisions issued by the STB and the ICC—reinforces our reading of

7    Section 13708's text.  See <u>Austin v. Town of Farmington</u>, 826 F.3d 622, 629 n.7 (2d

8    Cir. 2016).  It shows that Congress intended to require disclosure of and prohibit

9    false information about off-bill discounting or similar conduct, so that charges

10   stated on disclosed documents match the charges the motor carrier assesses in

11   fact.  <u>Cf.</u> Policy Statement on the Trucking Indus. Regulatory Reform Act of 1994,

---

service and shall also disclose, at such time, whether and to whom any allowance or reduction in charges is made.

(b) **False or misleading information.**--No person may cause a motor carrier to present false or misleading information on a document about the actual rate, charge, or allowance to any party to the transaction.

(c) **Allowances for services.**--When the actual rate, charge, or allowance is dependent upon the performance of a service by a party to the transportation arrangement, such as tendering a volume of freight over a stated period of time, the motor carrier shall indicate in any document presented for payment to the person responsible directly to the motor carrier that a reduction, allowance, or other adjustment may apply.

11

1   10 I.C.C.2d 251, 256, 1994 WL 580904, at *4 (Oct. 20, 1994) (explaining that off-bill

2   discounting provision was "specifically directed at discrepancies between rates

3   that are charged and rates that are set forth in tariffs").  In other words, Section

4   13708(b) prohibits a motor carrier from listing one amount on a bill when in

5   reality it charges another.

6          But not all disputes about payments due for motor carrier transportation

7   fall within the scope of Section 13708.[5]  Here, although it disputes payment,

8   BikerGear does not allege that FedEx stated one charge on an invoice but actually

9   assessed a different charge.  To the contrary, according to the complaint, FedEx's

10  invoices accurately reflected previously stated rates and FedEx assessed the

11  charges stated on its invoices—a situation that falls squarely outside the scope of

12  the statute.[6]  See SAC ¶¶ 145, 147 (alleging that FedEx represented to BikerGear's

---

[5] Otherwise, there would be many more than the twenty-five cases or so that have cited
Section 13708 in the twenty-two years since the provision was enacted.  Cf. Solo, 819
F.3d at 799 ("Neither we nor our sister circuits have yet examined the scope of
§ 13708.").

[6] We decline to decide whether the statute extends only to the disclosure of off-bill
discounts, as the District Court believed, 896 F. Supp. 2d at 294, and not to off-bill
surcharges.  But see Regulations Implementing Section 7, 1994 WL 94482, at *2
(interpreting pre-ICCTA statute to "govern[] any discounts, allowances, or adjustments
that come out of the published tariff charge or contract rate shown on the freight bill,"
but not to "cover charges assessed in addition to those specified in the tariff or
contract.").  Here, BikerGear alleges neither off-bill discounts nor off-bill surcharges.

1    bank and credit card companies that BikerGear "owed the stated amount[s]" and

2    that those stated amounts were transmitted to FedEx).

3          For these reasons, we affirm the District Court's dismissal of BikerGear's

4    claim under 49 U.S.C. § 13708(b).[7]

5          2.  RICO

6          We now turn to BikerGear's effort to revive its RICO claims, which the

7    District Court dismissed after granting summary judgment to FedEx on the

8    ground that BikerGear failed to satisfy RICO's distinctness requirement under 18

9    U.S.C. § 1962(c).

10         Section 1962(c) makes it

11         unlawful for any person employed by or associated with any
12         enterprise engaged in, or the activities of which affect, interstate or
13         foreign commerce, to conduct or participate, directly or indirectly, in
14         the conduct of such enterprise's affairs through a pattern of
15         racketeering activity or collection of unlawful debt.
16
17   18 U.S.C. § 1962(c).  "[T]o establish liability under § 1962(c) one must allege and

18   prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise'

---

[7] Because we hold that BikerGear has not alleged conduct covered by Section 13708(b), we express no view on whether a private right of action exists for violations of Section 13708, or whether BikerGear sufficiently identified a "person" who "caused" a "motor carrier" to present false information.  See Solo, 819 F.3d at 799–800 (discussing the distinction between the terms "person" and "motor carrier").

13

1      that is not simply the same 'person' referred to by a different name." <u>Cedric</u>

2      <u>Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001).[8]   A corporate entity

3      can be sued as a RICO "person" or named as a RICO "enterprise," <u>see</u> 18 U.S.C.

4      § 1961(3), (4), but the same entity cannot be <u>both</u> the RICO person and the

5      enterprise, <u>Anatian v. Coutts Bank (Switzerland) Ltd.</u>, 193 F.3d 85, 89 (2d Cir.

6      1999) (citing <u>Bennett v. U.S. Tr. Co. of N.Y.</u>, 770 F.2d 308, 315 (2d Cir. 1985)).

7      Though Congress initially enacted the RICO statute to target organized crime,

8      the Supreme Court has since identified the statute's basic purposes as "both

9      protect[ing] a legitimate 'enterprise' from those who would use unlawful acts to

10     victimize it and also protect[ing] the public from those who would unlawfully

11     use an 'enterprise' (whether legitimate or illegitimate) as a vehicle through which

12     unlawful activity is committed." <u>Cedric Kushner</u>, 533 U.S. at 164 (quotation

13     marks omitted).

14        BikerGear insists that the mere fact of separate legal incorporation satisfies

15     the distinctness requirement under Section 1962(c).   We disagree.   As we have

16     explained, "the plain language and purpose of the statute contemplate that a

---

[8] A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981).

1   <u>person</u> violates the statute by conducting an <u>enterprise</u> through a pattern of

2   criminality," so "a corporate person cannot violate the statute by corrupting

3   itself." <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 120 (2d Cir. 2013) (citing

4   <u>Bennett</u>, 770 F.2d at 315).  A corporation can act only through its employees,

5   subsidiaries, or agents.  So "if a corporate defendant can be liable for

6   participating in an enterprise comprised only of its agents—even if those agents

7   are separately incorporated legal entities—then RICO liability will attach to any

8   act of corporate wrong-doing and the statute's distinctness requirement will be

9   rendered meaningless." <u>In re ClassicStar Mare Lease Litig.</u>, 727 F.3d 473, 492 (6th

10  Cir. 2013) (citing <u>Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.</u>,

11  30 F.3d 339, 344 (2d Cir. 1994)).  Accordingly, a plaintiff may not circumvent the

12  distinctness requirement "by alleging a RICO enterprise that consists merely of a

13  corporate defendant associated with its own employees or agents carrying on the

14  regular affairs of the defendant," <u>Riverwoods</u>, 30 F.3d at 344—that consists, in

15  other words, of a corporate defendant "corrupting itself," <u>Cruz</u>, 720 F.3d at 120.

16      Our prior decisions reflect this common sense principle, rooted in the

17  language of Section 1962(c).  In <u>Riverwoods Chappaqua Corp. v. Marine</u>

18  <u>Midland Bank, N.A.</u>, we held that a corporation was not distinct from an alleged

15

1    enterprise consisting of the corporation and some of its own employees.  30 F.3d

2    at 344–45.  In <u>Discon, Inc. v. NYNEX Corp.</u>, we held that a parent corporation

3    and its two wholly-owned subsidiaries were not distinct from an enterprise

4    consisting of those three entities because each entity, like the corporation and its

5    employees in <u>Riverwoods</u>, was "acting within the scope of a single corporate

6    structure" and "guided by a single corporate consciousness."  93 F.3d 1055, 1064

7    (2d Cir. 1996), <u>vacated on other grounds</u>, 525 U.S. 128 (1998).  We reaffirmed

8    <u>Discon</u> in <u>Cruz v. FXDirectDealer, LLC</u>, holding that a wholly-owned subsidiary

9    was not distinct from an enterprise consisting of itself and its parent because the

10    allegations showed only that the two entities "operate[d] as part of a single,

11    unified corporate structure."  720 F.3d at 121.

12        Of course, the principle we announced in <u>Discon</u> and <u>Cruz</u> has its limits

13    and "does not foreclose the possibility of a corporate entity being held liable . . .

14    where it associates with others to form an enterprise that is sufficiently distinct

15    from itself."  <u>Riverwoods</u>, 30 F.3d at 344.  Where, for example, a natural person

16    controls two active corporations that operate independently in different lines of

17    business, receive independent benefits from the illegal acts of the enterprise, and

18    affirmatively <u>use</u> their separate corporate status to further the illegal goals of the

16

1    enterprise, we will regard each of the three entities as distinct from their

2    coordinated enterprise under Section 1962(c).  See Securitron Magnalock Corp. v.

3    Schnabolk, 65 F.3d 256, 263–64 (2d Cir. 1995).[9]

4           With these background principles in mind, and for the following reasons,

5    we reject BikerGear's argument that FedEx Ground, the alleged RICO enterprise,

6    is sufficiently distinct from the alleged RICO persons, FedEx Corp. and FedEx

7    Services, solely by virtue of their separate legal incorporation.  First, BikerGear

8    acknowledges the following facts suggesting FedEx's unified corporate structure:

9    (i) FedEx Corp. is a holding company that operates exclusively through wholly-

10   owned subsidiaries, (ii) FedEx's primary business is shipping, and (iii) FedEx

11   Ground runs a domestic ground shipping operation exclusively on behalf of

12   FedEx Corp.  Appellant's Br. 13.  Second, BikerGear presented no evidence

13   showing that any FedEx entity operated outside of a unified corporate structure

---

[9] One academic survey of the differing circuit law on this issue explains that in our circuit, "where an association in fact enterprise is allegedly comprised of a subsidiary, with or without agents, controlled by a parent corporation," the existence of a single corporate consciousness can be disproven by showing that the alleged criminal activities are distinguishable from the subsidiary's ordinary business.  See Laurence A. Steckman, RICO Section 1962(c) Enterprises and the Present Status of the "Distinctness Requirement" in the Second, Third and Seventh Circuits, 21 Touro L. Rev. 1083, 1096–97, 1270, 1281 (2006).

1    guided by a single corporate consciousness.  See Cruz, 720 F.3d at 121.  Nor did

2    BikerGear present evidence that FedEx Corp.'s choice of corporate structure was

3    in any way related to (let alone used to further) the racketeering activity alleged

4    in the complaint.[10]  Compare Discon, 93 F.3d at 1064, with Securitron Magnalock,

5    65 F.3d at 263–64; see Cedric Kushner, 533 U.S. at 164.

6         Viewing the record in the light most favorable to BikerGear, we hold that

7    no reasonable juror could consider FedEx Corp.'s and FedEx Service's

8    participation in FedEx Ground's affairs as anything other than participation in

9    FedEx Corp.'s own ground shipping business.  Even if BikerGear could prove a

10   pattern of racketeering activity, it could show at most that FedEx "corrupt[ed]

11   itself."  Cruz, 720 F.3d at 120.

12        It is true, as BikerGear points out, that the three FedEx defendants have

13   different board members and do not participate in each other's day-to-day

14   operations.  But at most this shows that the separate legal identity of each entity

15   is genuine under state corporate law.  Under Discon and Cruz, merely describing

16   the governance and management structure of FedEx's corporate family is

17   inadequate to satisfy RICO's distinctness requirement.  BikerGear must also

---

[10] For example, there is no record evidence that FedEx Ground's operations were infiltrated for racketeering activity.  See Steckman, supra note 9, at 1096.

18

1  show that the corporate structure suggests a distinct corporate consciousness

2  related to the alleged racketeering activity.

3      BikerGear invites us to distinguish <u>Discon</u> and <u>Cruz</u> by observing that the

4  alleged RICO enterprises in those cases were associations-in-fact comprised of all

5  the defendant corporations combined, while the alleged enterprise here is a

6  discrete subsidiary.  In our view, this difference is immaterial.  Whether a

7  corporate defendant is distinct from an association-in-fact enterprise turns on

8  whether the enterprise is more than the defendant carrying out its ordinary

9  business through a unified corporate structure unrelated to the racketeering

10  activity—not on whether the plaintiff opts to sue all or only some members of the

11  enterprise.  <u>Compare</u> <u>Discon</u>, 93 F.3d at 1064, <u>with</u> <u>Securitron Magnalock</u>, 65 F.3d

12  at 263–64.

13      In addition to being compelled by <u>Discon</u> and <u>Cruz</u>, our holding comports

14  with the Supreme Court's decision in <u>Cedric Kushner</u>.  There the Court held that

15  the alleged natural RICO "person," the boxing promoter Don King, was distinct

16  from Don King Productions, the alleged RICO corporate "enterprise," of which

17  Don King was president, sole shareholder, and employee.  533 U.S. at 160, 163.

18  King allegedly conducted the affairs of Don King Productions through a pattern

19

1    of racketeering activities consisting of fraud and other RICO predicate crimes.

2    Id. at 160–61.  In concluding that King and Don King Productions were distinct,

3    however, the Supreme Court emphasized that its holding was limited to the

4    circumstances in which "a corporate employee unlawfully conducts the affairs of

5    the corporation of which he is the sole owner—whether he conducts those affairs

6    within the scope, or beyond the scope, of corporate authority."[11]  Id. at 166.  As

7    for both corporate employees and corporate entities, the Supreme Court

8    suggested, Congress had in mind the "protect[ion of] the public from those who

9    would run organizations in a manner detrimental to the public interest."  Id. at

10   165 (quotation marks omitted).  Indeed, the Court described our earlier decisions

11   relating to the distinctness issue (for example, Discon) as "significantly

12   different"—a strong signal that it was not addressing cases in which, as here, a

13   corporate person conducts the affairs of an enterprise consisting only of

_____

[11] Elsewhere in its opinion, the Supreme Court strove repeatedly to limit and
distinguish its holding.  See id. at 163 (explaining that the purpose of incorporation is to
create a legal entity distinct from "the natural individuals who created it, who own it, or
whom it employs"); id. at 164 (noting that Second Circuit cases involving corporate
entities "involved significantly different allegations compared with the instant case");
id. at 165 ("[I]n [the] present circumstances the statute requires no more than the formal
legal distinction between 'person' and 'enterprise' (namely, incorporation) that is
present here." (emphasis added)); id. at 166 (noting that the Court's holding "says only
that the corporation and its employees are not legally identical"); id. (holding "simply"
that RICO "applies when a corporate employee unlawfully conducts the affairs of the
corporation of which he is the sole owner").

1   corporate members of its wholly-owned corporate family.  Id. at 164; see also Ray

2   v. Spirit Airlines, Inc., 836 F.3d 1340, 1356 (11th Cir. 2016); ClassicStar Mare, 727

3   F.3d at 492.  If, as BikerGear contends, the mere fact of separate incorporation

4   alone were enough to satisfy the distinctness requirement in all RICO cases

5   involving corporate entities as the alleged persons and enterprise, the Court in

6   Cedric Kushner would not have distinguished decisions like Discon.  And on the

7   record in this case FedEx does not remotely resemble an organization being run

8   "in a manner detrimental to the public interest."  Cedric Kushner, 533 U.S. at 165.

9        Finally, we note that in analogous contexts the majority of our sister

10  circuits appear to agree that the fact of separate incorporation alone fails to

11  satisfy RICO's distinctness requirement.  See Bessette v. Avco Fin. Servs., Inc.,

12  230 F.3d 439, 449 (1st Cir. 2000) ("Without further allegations, the mere

13  identification of a subsidiary and a parent in a RICO claim fails the

14  distinctiveness requirement"); Gasoline Sales, Inc. v. Aero Oil Co., 39 F.3d 70, 73

15  (3d Cir. 1994); NCNB Nat'l Bank of N.C. v. Tiller, 814 F.2d 931, 936 (4th Cir.

16  1987), overruled on other grounds by Busby v. Crown Supply, Inc., 896 F.2d 833

17  (4th Cir. 1990); N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d

18  182, 203 (5th Cir. 2015); ClassicStar Mare, 727 F.3d at 492; Bucklew v. Hawkins,

1  Ash, Baptie & Co., 329 F.3d 923, 934 (7th Cir. 2003); Fogie v. THORN Americas,

2  Inc., 190 F.3d 889, 898 (8th Cir. 1999); George v. Urban Settlement Servs., 833 F.3d

3  1242, 1249 (10th Cir. 2016) (citing Brannon v. Boatmen's First Nat. Bank of Okla.,

4  153 F.3d 1144, 1149 (10th Cir. 1998)); Ray, 836 F.3d at 1356–57; cf. Yellow Bus

5  Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639, 883 F.2d 132, 141

6  (D.C. Cir. 1989) (collecting cases), on reh'g in part, 913 F.2d 948 (D.C. Cir. 1990).

7  Some circuit courts have explained what "more" needs to be shown, consistent

8  with Cedric Kushner and the purpose of the RICO statute itself.  We see no need

9  to do the same since, for all the above reasons, on this record, we conclude that

10  BikerGear failed to satisfy RICO's distinctness requirement.[12]

11

---

[12] The concurrence emphasizes that we do not here endorse the "facilitation" test that the District Court adopted and that some of our sister circuits have imposed.  See ClassicStar Mare, 727 F.3d at 492 ("[C]orporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity."); Bucklew, 329 F.3d at 934 (requiring plaintiffs to show that "the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity"); see also David B. Smith & Terrance G. Reed, Civil RICO ¶ 3.07[2][a] (2017) (explaining that most circuits "hold that a subsidiary corporation cannot constitute the enterprise through which a defendant parent corporation conducts racketeering activity, at least in the absence of exceptional circumstances, such as a showing that the subsidiary was set up solely for the purpose of perpetrating a fraud").  But even if we adopted such a test, we agree with the District Court that BikerGear failed to satisfy it in this case.  See U1IT4Less, 157 F. Supp. 3d at 350-52.

1    **CONCLUSION**

2       To summarize:  (1) Section 13708 of the ICCTA requires shipping

3    documents to truthfully disclose the charges that a motor carrier in fact assesses,

4    and prohibits a motor carrier from stating it will charge one amount when in

5    reality it charges another; and (2) where, as here, the RICO persons and the RICO

6    enterprise are corporate parents and wholly-owned subsidiaries that "operate

7    within a unified corporate structure" and are "guided by a single corporate

8    consciousness," the mere fact of separate incorporation, without more, does not

9    satisfy RICO's distinctness requirement under Section 1962(c).

10      We have considered BikerGear's remaining arguments and conclude that

11   they are without merit.  The judgment of the District Court is **AFFIRMED**.

1    Woods, *District Judge*, concurring in part and concurring in the judgment:

2         I concur in the judgment because I am persuaded that this conclusion is

3    mandated by the Second Circuit's decision in *Cruz v. FXDirectDealer, LLC*, 720

4    F.3d 115 (2013).  I write separately only because the decision to reaffirm the

5    approach this Circuit took to the application of the "distinctness" principle in this

6    context prior to *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), was

7    made four years ago by the panel in *Cruz*.  Given that we are not working with a

8    blank canvas—*Cruz* dictates the outcome here—I decline to paint in an analysis

9    here to reconcile the court's decision in *Cruz* with *Cedric*.[1]  As a result, I do not

10   join in the discussion on pages 19 to 22 of this decision describing how the

11   Supreme Court's ruling in *Cedric* supports this conclusion.

12        *Cruz* reaffirmed the principle that "corporations that are legally separate

13   but 'operate within a unified corporate structure' and 'guided by a single

14   corporate consciousness' cannot be both the 'enterprise' and the 'person' under

---

[1] As the opinion notes, our Circuit's approach in *Cruz*, which cabins the Supreme Court's decision in *Cedric* to its facts, is consistent with that taken by a number of other federal courts.  Several commenters have remarked on this trend.  *See, e.g.*, William B. Ortman, *Parents, Subsidiaries, and RICO Distinctiveness*, 73 U. Chi. L. Rev. 377, 398 (2006) (arguing that circuit courts have "ignored the Supreme Court's repeated directives against the use of purposive interpretation to extratextually cabin RICO liability"); Laurence A. Steckman, *RICO Section 1962(c) Enterprises and the Present Status of the "Distinctness Requirement" in the Second, Third and Seventh Circuits*, 21 Touro L. Rev. 1082, 1296 (2006) (observing that "Cedric . . . plainly stated that bare legal distinctness is all the 'distinctness' RICO requires. . . .  The Second, Third and Seventh Circuits, plainly, remain committed to their pre-Cedric analytical paradigms.")

1    § 1962(c)."  *Cruz*, 720 F.3d at 121.  In support, *Cruz* cited to the Second Circuit's

2    1996 decision in *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996), *vacated*

3    *on other grounds*, 525 U.S. 128 (1998).  In reaffirming the rule established in *Discon*,

4    the opinion in *Cruz* did not analyze the impact of the Supreme Court's

5    intervening decision in *Cedric* on the Circuit's approach to the "distinctness"

6    principle.  The analysis of *Cedric* presented in this case—limiting the Supreme

7    Court's holding in *Cedric* to its facts, applicable only to distinctness analysis

8    involving an individual owner and her wholly-owned corporation, and equating

9    a separately organized subsidiary of a corporation to an "agent or employee" of a

10   corporation—was not stated overtly in *Cruz*.

11           Nor did *Cruz* expressly grapple with the Second Circuit's first decision

12   addressing the distinctness principle following *Cedric*—*City of New York v.*

13   *Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008).  In *Smokes-Spirits*, the panel

14   described the Supreme Court's holding in *Cedric* in a way that is at least arguably

15   broader than the approach reaffirmed in *Cruz*.  The *Smokes-Spirits* court wrote:

16           In *Cedric Kushner*, the Supreme Court explained that the RICO
17           "person" and alleged "enterprise" must be only legally, and not
18           necessarily actually, distinct. . . . The City has alleged . . . that the
19           enterprise is an innocent corporation, with its own legal basis for
20           existing, and the persons are employees or officers of the
21           organization unlawfully directing the enterprise's racketeering
22           activities.

2

1    *Id.* at 448.  In light of this language, I understand why Judge Seibel, writing

2    before *Cruz* was handed down, reached her initial conclusion regarding the

3    proper application of the distinctness principle after *Cedric*.  *U1IT4less, Inc. v.*

4    *FedEx Corp.*, 896 F. Supp. 2d 275, 288 (S.D.N.Y. 2012).

5         I emphasize too that in affirming the ruling below, we are not endorsing

6    the test applied by Judge Forrest in her opinion, namely "whether the fact of

7    separate incorporation facilitated the alleged unlawful activity."  Judge Forrest

8    derived the "facilitation" test from the Seventh Circuit's ruling in *Bucklew v.*

9    *Hawkins, Ash, Baptie & Co.*, 329 F.3d 923 (2003).  While *Bucklew* has been cited

10   favorably by a number of courts evaluating this issue, the test has no foundation

11   in the jurisprudence of the Second Circuit, and the application of existing circuit

12   doctrine suffices to resolve this case.[2]

---

[2] While decided two years after *Cedric*, *Bucklew* does not mention the Supreme Court's decision in its analysis.  Moreover, the single paragraph of analysis of this issue in *Bucklew* relies on cases involving the Sherman Act, principally *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).  *Bucklew,* 329 F.3d at 934.  In *Cedric*, Mr. King argued that *Copperweld* supported a ruling in his favor.  The Supreme Court rejected that argument, stating that its conclusion that legal separateness was all that was required by RICO was not "inconsistent with antitrust law's intracorporate conspiracy doctrine; that doctrine turns on specific antitrust objectives."  *Cedric*, 533 U.S. at 166.